**Daniel J. MILLINER, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 31A01–0710–CR–470.**

Court of Appeals of Indiana.

July 29, 2008.

---

Matthew Jon McGovern, Evansville, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Zachary J. Stock, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAILEY, Judge.

### Case Summary

In this consolidated appeal, Daniel J. Milliner challenges his conviction for failure to register as a sex offender, as a Class D felony,[1] and the order revoking his

---

1. *See* Ind.Code §§ 5–2–12–8 and 12–9 (re-     pealed); current sex offender registration pro-

probation and reinstating his previously suspended sentence. We affirm.

### Issues

Milliner raises two issues, which we restate as:

(1) Whether the State presented sufficient evidence to prove that he failed to register as a sex offender as defined by statute and charged by information; and

(2) Whether the trial court abused its discretion when it ordered him to serve the entire previously suspended sentence.

### Facts and Procedural History

In 2000, Milliner was charged and convicted of sexual battery. That conviction established Milliner as a sex offender and required that he register as such. On June 1, 2005, Milliner pleaded guilty to driving while suspended, and the trial court imposed a one-year sentence, suspended to probation.

In October of 2005, Milliner's probation officer discovered that Milliner was not living at the address listed on his sex offender registration form and that he and his wife had separated in late July of that year. The officer also noticed that Milliner's vehicle had been parked at his girlfriend's residence for an extended period of time, his name was on her answering machine's outgoing message, and he received mail at her address. Milliner was subsequently arrested, after which he registered a new home address.

The State charged Milliner with failure to register as a sex offender on or about August 1, 2005. That date was later amended to August 10, 2005. Based in part on the new charge, the State filed a petition to revoke Milliner's probation and suspended sentence. In its second amended petition, the State also claimed that Milliner violated the terms of probation by failing to notify the Probation Department of a change of address and by refusing to submit to a drug test. At the consolidated bench trial and probation revocation hearing, Milliner testified that he left the residence he shared with his wife in late July and thereafter lived with various relatives for one or two day periods during the relevant time. He described himself as "homeless" and argued that he had no duty to re-register under those circumstances.

The trial court found Milliner guilty of failure to register and also found that he had violated the terms of his probation by failing to submit to a drug screen and by failing to notify the Probation Department of a change in his address.[2] Accordingly, the trial court revoked his probation, ordered the one-year previously suspended sentence executed, sentenced Milliner to one and a half years for his failure to register, and ordered that sentence to run consecutive to the previously suspended sentence. Milliner now appeals.

### DISCUSSION AND DECISION

*Issue One: Sufficiency of the Evidence*

Milliner claims there is insufficient evidence to support his conviction. Our standard of review for sufficiency claims is well settled. We do not reweigh the evidence or judge the credibility of witnesses. *Dickenson v. State*, 835 N.E.2d 542, 551 (Ind.Ct.App.2005), *trans. denied.* We will

visions are codified at Ind.Code §§ 11-8-8-1 to-22.

**2.** The record is unclear whether the court used the failure to register conviction as an-

other basis of probation revocation, as the "Order Revoking Suspended Sentence" does not mention such. Resolution of that matter, however, is not crucial to our decision.

consider only the evidence most favorable to the judgment together with the reasonable and logical inferences to be drawn therefrom. *Robinson v. State,* 835 N.E.2d 518, 523 (Ind.Ct.App.2005). We will affirm the conviction if there is substantial evidence of probative value to support the judgment of the trier of fact. *Id.*

In order to convict Milliner for failure to register as a sex offender, the State was required to prove that he was a sex offender who knowingly or intentionally failed to register under the applicable chapter. Ind.Code § 5–2–12–9 (repealed, *see now* Ind.Code § 11–8–8–17). Under the statute, Milliner was required to complete and submit a new registration form to the local law enforcement authority within seven days of a change in his home address. *See* Ind.Code § 5–2–12–8 (repealed, *see now* Ind.Code §§ 11–8–8–11).

Milliner concedes that he moved from the home he shared with his wife in late July, and he admits he did not re-register as a sex offender within seven days. But he points to his testimony that he lived with various relatives during the relevant period and claims he did not "change" his home address, as required by the statute but, rather, he "lost" it. Appellant's Br. at 6. Indeed, Milliner repeatedly describes himself as "homeless" during the relevant period.

■ Here, the evidence shows that Milliner made his home with others, not that he was homeless.[3] Consistent with his argument at trial, Milliner now emphasizes that he did not live in one place for seven days or more. But we do not read the statute as having triggered the duty to re-register only after an offender lived seven consecutive days in a new location. If that were the case, an offender could evade supervision by moving every six days. Rather, the legislation provides a seven-day grace period during which a registrant could avoid prosecution by reporting a change of address, whether permanent or temporary, to the proper authorities. That construction comports with the purpose of the statute, which is to inform police of the current location of offenders for surveillance and notification purposes.

■ Milliner also contends that, even if the evidence is sufficient under the relevant statute, the State did not prove commission of the crime as charged in the amended information, which alleges:

> on or about the 10th day of August, 2005, in Harrison County, State of Indiana, one DANIEL JOSEPH MILLINER did knowingly or intentionally fail to register under I.C. 5–2–12 to-wit: DANIEL JOSEPH MILLINER, a person required to register under this chapter, moved from one residence in Harrison County, to another residence in Harrison County thereby changing his home address and failed to provide written notice of the home address within seven days after the address change to the local law enforcement agency with whom he last registered. . . .

Appellant's App. at 123.

Milliner insists that the evidence shows he did not "[re-establish] a residence. . . ."

---

3. We appreciate our dissenting colleague's compassion for the homeless, many of whom are mentally ill or drug addicted. We likewise share this compassion. Nevertheless, the legislature did not criminalize homelessness; the failure to timely register is the conduct that runs afoul of the law. The record shows that Milliner's plight was the product of marital discord, and he lived with relatives (and eventually with his girlfriend), but failed to re-register. In any event, as noted *supra,* the statutes under which this case is decided have been repealed. In the current statutory scheme, the legislature defines "temporary residence" and prescribes how an offender without a principal or temporary residence must proceed. *See* Ind.Code § 11–8–8–12.

Appellant's Br. at 14. He casts his argument as a "material variance" between the charged offense and the evidence produced, which affected the preparation of his defense. Appellant's Br. at 12–15. In effect, however, he claims that by use of the word "residence" in the information the State heightened its burden of proof.

We are not persuaded that, by incorporating the word "residence" in the charging information, the State was required to prove a level of permanency in Milliner's move. It is without dispute that, in late July, Milliner changed his residence *from* that he shared with his wife. The charging information did not require the State to prove that Milliner moved *to* permanent or semi-permanent housing. The record shows that Milliner moved from one residence and to another, even if the new residence was temporary, "thereby changing his home address," and that he failed to re-register as a sex offender within seven days of the move. We affirm Milliner's conviction for failing to register as a sex offender.

### Issue Two: Reinstatement of Previously Suspended Sentence

Milliner also claims that the trial court abused its discretion when it ordered him to serve his previously suspended sentence. He asks that we revise his sentence based on the nature of the probation violations and upon his character. Milliner mentions Indiana Appellate Rule 7(B), which provides that we may revise a sentence if we find it inappropriate in light of the nature of the offense and the character of the offender, but he also suggests that the rule may not apply. He is correct.

■ Our Supreme Court recently reaffirmed that a trial court's action in a post-sentence probation violation proceeding is not a criminal sentence as contemplated by Rule 7(B) and, thus, the rule is inapplicable. *Jones v. State*, 885 N.E.2d 1286, 1290 (Ind.2008). The Court had previously explained:

> Probation is a matter of grace left to trial court discretion, not a right to which a criminal defendant is entitled. The trial court determines the conditions of probation and may revoke probation if the conditions are violated. Once a trial court has exercised its grace by ordering probation rather than incarceration, the judge should have considerable leeway in deciding how to proceed. If this discretion were not afforded to trial courts and sentences were scrutinized too severely on appeal, trial judges might be less inclined to order probation to future defendants.

*Prewitt v. State*, 878 N.E.2d 184, 188 (Ind. 2007) (internal citations omitted). Thus, rather than the independent review afforded sentences under Rule 7(B), a trial court's sentencing decisions for probation violations are reviewable using the abuse of discretion standard. *Id.* An abuse of discretion occurs where the decision is clearly against the logic and effect of the facts and circumstances. *Id.*

■ First, we note that the court had discretion to order execution of the entire sentence suspended at the time of initial sentencing. *See* Ind.Code § 35–38–2–3(g)(3). Additionally, Milliner committed multiple offenses in a reasonably short period of time, and he violated multiple terms of his probation. His actions show a lack of respect for the law and for the opportunities afforded him. The trial court's decision is not clearly against the logic and effect of the facts and circumstances. The court acted within its broad discretion when it ordered Milliner to serve the one-year previously suspended sentence.

Affirmed.

FRIEDLANDER, J., concurs.

KIRSCH, J., dissents with opinion.

KIRSCH, Judge, dissenting.

When does a cardboard box under a bridge qualify as a "home address?" A park bench? What about a pile of rags next to a trash bin? Or a homeless shelter where one had a bowl of soup for lunch, but cannot return that night because there is no room?

Homelessness is not a crime, but my colleagues make it so for anyone who is required to register under Ind.Code § 5–2–12–9 (repealed, *see* now Ind.Code § 11–8–8–17). While they resolve the evidentiary sufficiency issue in this case, they raise the specter of due process concerns in countless others.

My colleagues interpret Ind.Code § 5–2–12–8 to require that a homeless person register every place he sleeps within seven days. The State would apply this requirement to homeless shelters and park benches. *Appellee's Brief,* p. 6. Both would apply this requirement even though the person does not reside at the location, has not slept or even been at the location in the preceding six days, and has no plans to return there. A homeless individual who moves about, staying at emergency homeless shelters when space is available and on the streets when it is not, would be required to register retroactively *every single day* the location where he slept six days earlier even though doing so would not provide any meaningful information to anyone or protect the public in any way.

I do not think that this is what our General Assembly intended when it enacted the registry statute, and I respectfully dissent.